5 So.3d 915 (2009)
STATE of Louisiana
v.
Tony GAINES.
No. 2008-KA-0967.
Court of Appeal of Louisiana, Fourth Circuit.
February 11, 2009.
*916 Robert L. Freeman, Jr., District Attorney, Rachel Luck Africk, Assistant District Attorney, New Orleans, LA, for appellant.
Harry S. Hardin III, Avery B. Pardee, Jones Walker Waechter Poitevent Carrere & Denegre, LLP, New Orleans, LA, for defendant/appellee.
(Court composed of Judge MAX N. TOBIAS, JR., Judge EDWIN A. LOMBARD, Judge PAUL A. BONIN).
MAX N. TOBIAS, JR., Judge.
On 20 March 2007, the defendant, Tony Gaines ("Gaines"), was charged with possession of heroin. A plea of not guilty was entered on 30 March 2007. On 30 November 2007, counsel was appointed and several pretrial motions were filed. A hearing on motions was held on 18 January 2008; the district court found probable cause and denied the motion to suppress the evidence. On 1 and 22 February 2008, the defense filed a motion for subpoena duces tecum. Gaines' trial that was scheduled for 3 March 2008 was continued at the request of the defense because it had yet to receive a response to the motion for subpoena duces tecum. Trial was then rescheduled for 24 April 2008. On 14 March 2008, the defense filed a motion to quash the bill of information, asserting that Gaines' constitutional right to a speedy trial was violated. The trial court granted the motion on 11 April 2008, and the state's timely motion to appeal the ruling was granted on 14 April 2008.

FACTS
Because this appeal pertains to the granting of a motion to quash based upon the denial of the right to a speedy trial, the facts relating to Gaines' arrest are not pertinent.

DISCUSSION
The only issue in this appeal is whether the district court erred when it granted Gaines' motion to quash the indictment. In the motion and supporting memorandum, he argued that his constitutional right to a speedy trial had been violated.
In State v. Batiste, 05-1571, pp. 6-7 (La.10/17/06), 939 So.2d 1245, 1250, the Court discussed the legal principles which pertain to a claim that a defendant's constitutional right to speedy trial has been denied:
The constitutional right to a speedy trial is imposed upon the states by the Due Process Clause of the Fourteenth Amendment. Klopfer v. North Carolina, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967). The underlying purpose of this constitutional right is to protect a defendant's interest in preventing pretrial incarceration, limiting possible impairment of his defense, and minimizing his anxiety and concern. Barker v. Wingo, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). *917 The Supreme Court has set forth the following four factors for courts to consider in determining whether a defendant's right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's assertion of his right to speedy trial; and (4) the prejudice to the accused resulting from the delay. Id. at 531-532, 92 S.Ct. at 2192-93; see also State v. Reaves, 376 So.2d 136 (La.1979) (adopting Barker factors). The specific circumstances of a case will determine the weight to be ascribed to the length of and reason for the delay because "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." [State v.] Reaves, 376 So.2d at 138 (quoting Barker, 407 U.S. at 531, 92 S.Ct. at 2192).
The United States Supreme Court made the following observations concerning a defendant's Sixth Amendment right to a speedy trial in Barker v. Wingo, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972):
Finally, and perhaps most importantly, the right to a speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial. If, for example, the State moves for a 60-day continuance, granting that continuance is not a violation of the right to speedy trial unless the circumstances of the case are such that further delay would endanger the value the right protects. It is impossible to do more than generalize about when those circumstances exist.... Thus, as we recognized in Beavers v. Haubert, ... [198 U.S. 77, 25 S.Ct. 573, 49 L.Ed. 950 (1905)], any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case: "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights of a defendant. It does not preclude the rights of public justice." 198 U.S. at 87, 25 S.Ct. at 576, 49 L.Ed. 950.
The amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried. Such a remedy is more serious than an exclusionary rule or a reversal for a new trial, but it is the only possible remedy.
Barker, 407 U.S. at 522-23, 92 S.Ct. at 2187-2188.
In addition, the first of the four Barker v. Wingo factors, the length of the delay, is the "triggering mechanism," and if the length of the delay is not "presumptively prejudicial," the court need not inquire into the other three Barker factors. See State v. Scott, 04-1142 (La.App. 4 Cir. 7/27/05), 913 So.2d 843; State v. Santiago, 03-0693 (La.App. 4 Cir. 7/23/03), 853 So.2d 671.
In the case at bar, Gaines was arrested on 10 January 2007. The bill of information was filed on 20 March 2007. The motion to quash was filed on 14 March 2008, and the court granted the motion on 11 April 2008. Thus, the delay from Gaines' arrest to dismissal was approximately fifteen months, and the delay from *918 the institution of prosecution to dismissal was approximately thirteen months.
Most cases discussing whether the time limits are presumptively prejudicial considered the time between the filing of the bill of information or indictment and the granting of the motion to quash. In State v. Leban, 611 So.2d 165 (La.App. 4th Cir. 1992), the state appealed the quashing of an arson charge against the defendant. This court found the sixteen-month delay between the filing of the bill and the quashing of the charge to be presumptively prejudicial, thereby triggering consideration of the three remaining Barker factors. In State v. Johnson, 622 So.2d 845 (La.App. 4th Cir.1993), a delay of twenty-two months was found not to be excessive. This court in State v. Brown, 93-0666 (La. App. 4 Cir. 7/27/94), 641 So.2d 687, did not specifically state that nineteen months was presumptively prejudicial, but we nevertheless considered all the Barker factors. This court reversed the granting of the motion to quash, finding that the defendant did not show any prejudice resulting from the nineteen-month delay. The Louisiana Supreme Court in State v. Love, 00-3347 (La.5/23/03), 847 So.2d 1198, found that a twenty-two-month delay was presumptively prejudicial but the defendant's right to a speedy trial was still not violated. Again, here, the delay between the filing of the bill of information and the granting of the motion to quash was only thirteen months and not prejudicial when compared to the cases cited above.
Although we do not find the delay in this case to be prejudicial, we find it appropriate to consider the remaining Barker factors, recognizing that a reviewing court might find them appropriately considered.
The foremost reason causing the delay in the proceedings against Gaines was the failure of the district court to appoint counsel until 30 November 2007. Gaines argued in his motion to quash that the delay was the fault of the state because the state failed to adequately fund the Orleans Public Defender's Office. Notably, five continuances occurred during the period in which Gaines was without counsel: 30 April 2007, 7 May 2007, 8 June 2007, 10 August 2007, and 28 September 2007.[1] The state counters that the fault should be placed on the public defender's office for filing the motion to withdraw as counsel.
Gaines also asserted in his motion to quash that the state caused delays with discovery. The record shows that in response to the supplemental motion for discovery filed by the defense, the state indicated that it did not have in its possession certain items that the defense sought and informed the defense that it should file a subpoena duces tecum with the police department. The trial court agreed. Apparently the clerk of the district court delayed forwarding the subpoena to the sheriff to be served on the police department. After receiving the subpoena, the police department did not respond immediately.[2] Gaines argues that the delays caused by the clerk and the police department should be attributed to the state. However, we find no Louisiana case that specifically attributes either delay to the state.
Gaines cites only one case, State v. Van Dyke, 03-437 (La.App. 3 Cir. 10/1/03), 856 So.2d 187, in support of his contention that the failure to appoint counsel should be *919 attributed to the state. The Van Dyke case involved the difficulty in securing capital certified counsel to represent the defendant because of a lack of funding. Without specifically holding that the problems securing certified counsel were attributable to the state, the Third Circuit noted that most of the delays were attributable to the defense because of the numerous defense motions that were filed. It also found that the defendant did not timely assert his right to a speedy trial and that he did not show that he was prejudiced by the six years, five months delay. Thus, the district court's judgment granting the motion to quash was reversed.
Even assuming that both delays are attributable to the state, the delay in this case is not as egregious as those in the cases cited above. Also, once counsel was appointed, some of the delay was caused by the filing of pretrial motions, including a supplemental motion for discovery and an application for subpoena duces tecum.
Regarding whether Gaines asserted his right to a speedy trial, the record shows, and the state concedes, that Gaines timely invoked his right to a speedy trial.[3]
The final factor to consider is whether Gaines was prejudiced by the delay. In this regard, he argues that he does not have to make any specific showing of prejudice. Instead he argues that prejudice is shown by the simple fact that he was deprived of his right to counsel for eight months post-arraignment when an effective investigation may have been made. He likens his case to that of State ex rel. Miller v. Craft, 337 So.2d 1191 (La.1976). In Craft, the state moved ex parte to secure determination of the defendant's mental capacity prior to formally charging him, but failed to bring the examination to a timely conclusion. Though the trial court signed the order in May of 1974, he remained incarcerated for nearly two years without being transferred to the forensic facility, as ordered, to have an examination performed. Counsel was not appointed until after the defendant was formally charged in February of 1976. In finding that the defendant's right to a speedy trial had been violated, the court found that the state was solely responsible for the delay. The court also noted that physicians, who finally examined the defendant in 1976, found that he was disoriented and confused as to why he was in prison and that he was mentally retarded. The court speculated on the anxiety suffered by the defendant, who was of low intelligence and never formally charged. It also noted that because no counsel was appointed during that nearly two-year period, no investigation was conducted to exonerate him from the crime; the defendant indicated that within that two-year period, he had forgotten the names of people who might have been able to assist him with his defense.
The circumstances in the case at bar are distinguishable. Here, Gaines was formally charged, and there is no evidence that he did not understand the reason for his incarceration. Also, he was released on bond for at least three months during that eight-month, post-arraignment delay. The only anxiety he alleges to have suffered pertained to when counsel would be appointed counsel. Unlike in Craft, Gaines has not asserted that any particular evidence was lost or that he is unable to locate any potential defense witnesses because of the delay.
*920 Gaines also cites State v. Harris, 03-0524 (La.App. 4 Cir. 9/10/03), 857 So.2d 16, in support of his premise that he need not show any specific prejudice; however, that case is considerably different from the case here. In Harris, the trial court attributed a twenty-four-month delay to the state because it was unable to get its witnesses to appear. On the last scheduled trial date in the original case, it moved for a continuance for this same reason; the trial court denied the motion and the state nolle prosequied the charges only to reinstitute them in another case. This court affirmed the trial court's granting of the motion to quash because of the lack of preparedness by the state and numerous continuances it requested despite the lack of information on the defendant from which it could determine whether prejudice was shown. Here, the record does not show that the state sought to intentionally delay Gaines' case because it was unprepared.
In sum, after reviewing the Barker factors, we find that the district court erred by granting the motion to quash. The delay in this case is not flagrant, and some of the delay is attributable to the defense. Further, Gaines has not shown that he was prejudiced by the delays.

CONCLUSION
We reverse the judgment of the trial court's ruling dismissing the case against Gaines. We reinstate the case against Gaines and remand the matter to the trial court for further proceedings.
REVERSED AND REMANDED.
BONIN, J., dissents with reasons.
BONIN, J., dissents with reasons.
I respectfully dissent from the reversal of the trial court's ruling granting the defendant's motion to quash. The majority's evaluation of whether Gaines' right to a speedy trial was violated ignores two essential considerations. First, in the proper allocation of trial court and intermediate appellate court functions, we are to apply the "abuse of discretion" standard to the trial court's discretionary decision. State v. Love, 00-3347, p. 9-10 (La.5/23/03), 847 So.2d 1198, 1206-1207. Second, the facts relating to Gaines' arrest, and the ensuing charges, are highly pertinent, but not treated in the majority's review of the trial court's discretionary decision.
The United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 530-531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) discussed one factor, "length of delay", in evaluating a claim that a defendant was denied his Sixth Amendment right to a "speedy trial" as follows:
The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex charge.

(all emphasis added)
Mr. Gaines was charged with simple possession of heroin, a violation of La. R.S. 40:966(C)(1).[1] There were two police officers, Detectives Leonard Davis and Tommie Felix[2] involved in the chase and arrest *921 of Mr. Gaines. As a result of their search of Mr. Gaines incident to his arrest, they obtained 2 plastic bags, which contained 0.9 grams of heroin. The only other evidence necessary for the prosecution was the criminalist report for which the prosecution gave notice of its intention to use pursuant to La. R.S. 15:499 et seq. in lieu of live testimony of the testing laboratory personnel. We see that this is about as "ordinary" a street crime as they come. It is surely not a "complex" charge.[3]
State v. Reaves, 376 So.2d 136, 138 (La. 1979) is instructive on length of delay in a simple case:
Reaves was not subjected to an extremely long delay. He filed his motion to quash after only three and one-half months from the filing of the original bill of information. However, the mere length of the delay does not determine the speedy trial issue. Since this case involves a simple misdemeanor offense, possession of a single marijuana cigarette, the constitution tolerates relatively brief delays. Barker, supra.; Alfred, supra. Accordingly, we must examine the peculiar circumstances of the case to find if the length of the delay and the closely related factor, the reason for the delay, provoke a speedy trial inquiry. Barker, supra.; Alfred, supra.
(emphasis added)
Of course, this is a felony case, but the proof required in this case is not materially more difficult or complex than the simple marijuana case. We are, therefore, still in the realm of the constitution tolerating relatively brief delays.
Our inquiry should then turn to what is a "presumptively prejudicial", Barker, supra, in an ordinary street crime involving possession of a small amount of heroin. As a guide only, the ABA Standards for Criminal Justice, Third Edition, for "Speedy Trial and Timely Resolution of Criminal Cases" suggests at Standard 12-2.1(b) the following:
(b) The presumptive speedy trial limit for persons held in pretrial detention should be [90] days from the date of the defendant's first appearance in court after the filing of the a charging instrument. The presumptive limit for persons who are on pretrial release should be [180] days from the date of the defendant's first appearance in court after either the filing of any charging instrument or the issuance of a citation or summons. Shorter presumptive speedy trial time limits should be set for persons charged with minor offenses.
Other sources of guidance are the case disposition time standards which the Conference of Chief Justices and the Conference of State Court Administrators have adopted.[4] Both conferences adopted a 180 day disposition from arrest to trial standard for felonies.
Turning to the "closely related factor, the reason for the delay," we cannot ignore that the primary cause for the delay in Mr. Gaines' case was the failure of the trial court to appoint counsel for Mr. Gaines until eight months after his arraignment. This failure was a violation of the Supreme Court's clear directive in State v. Citizen, 04-1841 (La.4/1/05), 898 So.2d 325. Acting *922 on a writ application from the prosecution, our court on August 16, 2007 ordered the trial court to appoint counsel for Mr. Gaines and others. State v. Kenneth Edwards, 07-0488 (La.App. 4 Cir. 8/16/07) (unpublished). The trial court finally provided counsel to Mr. Gaines about three months after our order.
The other delays from then until the trial judge granted the motion to quash which are wholly unattributable to the defendant were those caused by the failure of the clerk's office to properly cause the issuance of a subpoena duces tecum when Mr. Gaines' counsel requested it the first time, and by the police department's documented indifference to producing the subpoenaed materials. In my review of the record, I detect no "deliberate attempt [by the prosecution] to delay the trial in order to hamper the defense". Barker, 407 U.S. at 531, 92 S.Ct. 2182.
A third factor which is to be weighed is "the defendant's assertion of his right" to a speedy trial. The trial court, the prosecution, and the majority opinion all acknowledge that Mr. Gaines did timely assert his desire for a speedy trial. The record contains his uncounselled handwritten motion forwarded to the district court from Orleans Parish Prison, where he was incarcerated. In it he states that he has been in custody since January 10, 2007, longer than the sixty days permitted by La. C.Cr.P. art. 701. The motion is signed but undated. However, it contains a handwritten notation, also undated, to a court officer: "Otis  This RTSC [Rule to Show Cause] was reset on 3/12 to 6-15-07 Guy is still in jail." Later, his court appointed counsel reasserted the demand.
A fourth factor is "prejudice to the defendant". As the majority opinion notes, Mr. Gaines was brought into court five times in the period between his arraignment and the appointment of counsel.[5] Comparably to Reaves, 376 So.2d at 139, "the requirement of prejudice is not as stringent as it could be in a case of a more serious or violent crime." A defendant bears burdens "by repeated, futile court appearances [which] may ultimately force him to plead guilty in order to maintain his job and peace of mind." Id. "[E]ven if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." Barker, 407 U.S. at 533, 92 S.Ct. 2182. While the majority opinion correctly notes that State ex rel Miller v. Craft, 337 So.2d 1191, 1195 (La.1976) is distinguishable, nonetheless Mr. Gaines like the citizen in Craft, was "without appointed counsel" for much of the period of delay. Courts recognize the pitfalls of an uncounselled defendant attempting to compete against experienced prosecutors and navigating technical rules of evidence and procedure, and customarily discourage a defendant from representing himself. See State v. Strain, 585 So.2d 540, 543 fn. 3 (La.1991). "[T]o deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." Maine v. Moulton, 474 U.S. 159, 170, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). His anxiety at court appearances while unrepresented ought to be easily understood. While the period of delay was not as long for Mr. Gaines, neither were his charges as serious as aggravated burglary, which was the offense charged in Craft.

Returning to Barker, 407 U.S. at 534, 92 S.Ct. 2182, we are further instructed in the proper methodology in considering these four factors along with others:

*923 We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.
(emphasis added)
A presumptive time limit for speedy trial only means that period of time, exclusive of excusable delays, such as absence of witnesses, competency proceedings, defense continuances, or the defendant's failure to appear.[6] Complex cases are also deserving of extended presumptive periods.[7] In this simple felony case for the prosecution, Mr. Gaines was without representation after indictment, much less after arrest and incarceration, for a period exceeding the recommended time period for all non-complex felony cases, including those of a much more serious nature than simple possession of 0.9 grams of heroin. Allowing Mr. Gaines to be unrepresented by counsel for such an extended period when the "guy," all by himself, is calling out from the jail to the court for relief under Louisiana's so-called speedy trial statute[8] supports the trial judge's exercise of discretion to quash the indictment and dismiss the charge against him.
As our court noted in applying the Love, supra, standard of review we are to conduct "an examination of the entire record in order to discern whether there was 'palpable abuse' on the part of the trial court in granting the motion to quash. State v. Harris, 03-0524, p. 5 (La.App. 4 Cir. 9/10/03), 857 So.2d 16, 18. Harris also involved a simple possession of heroin charge.[9] After its examination of the entire record, the Harris court concluded that the trial judge had not abused his discretion. The trial judge in this case, in my view, did not abuse his discretion and we should uphold his decision.
I, therefore, respectfully dissent.
BONIN, J., dissents with reasons.
NOTES
[1] Gaines posted bond on 10 May 2007 and was not in custody through at least 10 August 2007. On the scheduled court dates of 8 June 2007 and 10 August 2007, he appeared in court without counsel.
[2] As noted, the only defense continuance requested was because it had yet to receive a response to the subpoena duces tecum.
[3] Gaines asserted his right to a speedy trial sometime in March 2007 by filing a motion and again on 30 November 2007.
[1] The sentence for this offense is fully suspendible.
[2] Det. Felix has since died in a traffic accident on the St. Claude bridge.
[3] The information is gleaned from the police gist contained in the record and the prosecution's pleadings.
[4] Source: The National Center for State Courts, "Caseflow Management: The Heart of Court Management in the New Millenium," by David C. Steelman et al., p. 158. I readily acknowledge that neither of these sources, nor for that matter the ABA Standards, purport to be declaring constitutional requirements, but rather standards for case dispositions. But they are useful in assessing impermissible constitutional delays.
[5] Three of these times were after he posted financial bail.
[6] See Barker, 407 U.S. at 531, 92 S.Ct. 2182: "a valid reason, such as a missing witness, should serve to justify appropriate delay." Also, see ABA Speedy Trial Standard 12-2.3 "Excluded periods".
[7] ABA Speedy Trial Standard 12-2.1(d).
[8] La.C.Cr.P. art. 701.
[9] In Harris the delay was longer and the prosecution was culpable for the delay. However, as each speedy trial inquiry is particularized, I do not consider, and the decision does not purport to establish, that the delay in Harris was the minimum period of delay permissible in a simple possession of heroin case to "trigger" the speedy trial inquiry.